IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JILLIAN GALLAGHER, on behalf of
herself and all others
similarly situated,

             Plaintiff,

     v.

JOHNSON & JOHNSON CONSUMER
COMPANIES, INC.

             Defendant.

HONORABLE JEROME B. SIMANDLE

Civil No. 15-6163 (JBS/AMD)

**OPINION**

Appearances:

John W. Trimble, Esq.
TRIMBLE & ASSOCIATES
Washington Professional Campus
900 Route 168
Suites B1-B2
Turnersville, NJ 08012
     -and-
Natalie Finkelman Bennett, Esq.
James C. Shah, Esq.
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
475 White Horse Pike
Collingswood, NJ 08107
     Attorneys for Plaintiff Jillian Gallagher, on behalf of
     herself and all others similarly situated

David R. Kott, Esq.
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101
     Attorney for Defendant Johnson & Johnson Consumer
     Companies, Inc.

**SIMANDLE**, Chief Judge:

I.   **INTRODUCTION**

This is a putative consumer class action suit against Defendant Johnson & Johnson Consumer Companies, Inc. ("Johnson & Johnson") for alleged deceptive labeling and advertising practices related to their line of BEDTIME® products, which are marketed to help babies sleep better. The case, which alleges violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, et seq., was filed in New Jersey state court, but was subsequently removed by Defendant to this Court.

Presently before the Court is Plaintiff's motion to remand the case back to the Superior Court [Docket Item 14], and Defendant's motion to transfer the case to the Central District of California [Docket Item 4]. Because the case does not meet the jurisdictional requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), the Court will grant Plaintiff's motion and remand this case back to the Superior Court. Defendant's motion to transfer will be dismissed as moot.

## II.   BACKGROUND

In this putative class action, Plaintiff Jillian Gallagher alleges that Defendant Johnson & Johnson engaged in false and deceptive sale and advertising practices with its JOHNSON'S® BEDTIME® Bath and JOHNSON'S® BEDTIME® Lotion products (collectively, "Bedtime products" or "Products"), which are marketed for babies. Specifically, Plaintiff alleges that the

2

Bedtime products, which are sold at a premium over Defendant's other baby washes and lotions, falsely advertise that they are "clinically proven" to "help baby sleep better." Plaintiff alleges that no studies show that the Bedtime products are clinically proven to provide any results, and Defendant has no basis for its claim. (Compl. [Docket Item 1] ¶¶ 1-3.)

The Complaint alleges a cause of action under New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq. Johnson & Johnson is a New Jersey company, and Plaintiff, a New Jersey consumer who purchased Defendant's products in New Jersey, filed the case in the Superior Court of New Jersey, Camden County, Law Division. The putative class is defined in the Complaint as

> [a]ll New Jersey citizens who purchased the Bedtime Products within New Jersey, not for resale or assignment.

(Compl. ¶ 48.)

Three other putative class action complaints alleging deceptive advertising practices for BEDTIME® products were also filed against Defendants in federal district courts in California, Illinois, and New York: Real v. Johnson & Johnson Consumer Co., No. 15-cv-5025 (C.D. Cal. July 2, 2015); Leiner v. Johnson & Johnson Consumer Co., No. 15-cv-5876 (N.D. Ill. July 2, 2015); and Hidalgo v. Johnson & Johnson Consumer Co., No. 15-

3

cv-5199 (S.D.N.Y. July 2, 2015).[1] The suits contain substantially similar allegations and each seeks relief under its respective state's consumer statute. The instant case was the only one filed in state court.

Invoking federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), Johnson & Johnson removed the suit to the District of New Jersey under 28 U.S.C. § 1446, and shortly thereafter, filed a motion to transfer this case to the Central District of California [Docket Item 4]. Plaintiff opposed the transfer [Docket Item 16], and filed a motion to remand the case back to state court [Docket Item 17], asserting that the requirements for federal jurisdiction under CAFA are not satisfied because the parties are all New Jersey citizens.

Because this Court's subject matter jurisdiction has been placed in dispute, Plaintiff's remand motion will be decided first.

## III. PLAINTIFF'S MOTION TO REMAND

### A. The Removal Statute and Requirements for Diversity Jurisdiction Under CAFA

The removal statute, 28 U.S.C. § 1441(a), permits only state-court actions that originally could have been filed in

---

[1] In its Motion to Transfer, Defendant misidentified the docket number of the Hidalgo case as 15-cv-5119. The correct docket number is 15-cv-5199.

4

federal court to be removed. 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending."); see also Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

Because Gallagher's Complaint contains only claims under the NJCFA, there is no federal question jurisdiction under 28 U.S.C. § 1331. At issue is whether the Court has diversity jurisdiction to hear Plaintiff's claims.

Diversity jurisdiction in class action cases is governed by the Class Action Fairness Act of 2005. Congress passed CAFA to put an end to certain allegedly abusive practices by plaintiffs' class counsel, and because it was concerned that class actions were too often precluded from federal court by unnecessary procedural requirements. See S. Rep. No. 109-14, at 43, 2005 U.S.C.C.A.N. 3, 41 (2005); see also Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 148-49 (3d Cir. 2009). CAFA sought to address these problems by amending the federal diversity statute to "broaden[] federal diversity jurisdiction over class actions with interstate implications." Lowery v. Alabama Power Co., 483 F.3d 1184, 1193 (11th Cir. 2007).

5

Before the enactment of CAFA, courts looked to 28 U.S.C. § 1332(a) to determine whether they had diversity jurisdiction over class actions, and required that each named member of the plaintiff class be diverse from each of the defendants. See, e.g., Snyder v. Harris, 394 U.S. 332, 340 (1969). CAFA eliminated the "complete diversity" requirement of § 1332(a) and inserted a new subsection, § 1332(d), which lowered the threshold requirements for jurisdiction in certain class actions.

Section 1332(d)(2) provides federal district courts with "original jurisdiction" over a case when three requirements are met: (1) an amount in controversy that exceeds $5,000,000; (2) minimally diverse parties; and (3) a class consisting of at least 100 or more members (the numerosity requirement). Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1348 (2013). With respect to the second requirement, known as the "minimal diversity" requirement, CAFA provides that diversity is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). In contrast to the complete diversity requirement of § 1332(a), § 1332(d)(2) requires "only one member of the plaintiff class – named or unnamed – [to] be diverse from any one defendant" for diversity to be satisfied. Lowery v.

6

Alabama Power Co., 483 F.3d 1184, 1193 n.24 (11th Cir. 2007).

CAFA also provides several exceptions to federal court jurisdiction, one of which is called the "home state" exception. Under this exception, the district court must decline to exercise jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(2)(4)(B). If a class action case falls into this category, a district court must remand it back to the state court where it was originally filed. See Vodenichar v. Halcon Energy Properties, Inc., 733 F.3d 497, 503-04 (3d Cir. 2013); Dicuio v. Brother Int'l Corp., No. 11-1447, 2011 WL 5557528, at *2 (D.N.J. Nov. 15, 2011).

**B. Standard of Review and Burden of Persuasion**

Although removal statutes must generally be strictly construed, with any doubt to be resolved in favor of remand, see, e.g., Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009), the presumption against removal does not apply to class actions invoking jurisdiction under the Class Action Fairness Act. Congress enacted CAFA to facilitate class actions in federal court, and its "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." Dart

7

Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554
(2014) (quoting S. Rep. No. 109-14, p. 43 (2005)).

     To decide whether CAFA's jurisdictional requirements are
satisfied, a court will consider the allegations in the
complaint and in the defendant's notice of removal. Judon v.
Travelers Property Cas. Co. of Am., 773 F.3d 495, 500 (3d Cir.
2014); Frederico v. Home Depot, 507 F.3d 188, 196 (3d Cir.
2007). The party asserting jurisdiction – here, Defendant
Johnson & Johnson – has the burden of demonstrating that the
case is properly before the federal court. Hertz Corp. v.
Friend, 559 U.S. 77, 96-97 (2010) (citations omitted); Judon v.
Travelers Property Cas. Co. of Am., 773 F.3d 495, 500 (3d Cir.
2014). And, where relevant facts are in dispute, the removing
party must justify its allegations by a preponderance of the
evidence. Frederico v. Home Depot, 507 F.3d 188, 194 (3d Cir.
2007). However, once jurisdiction has been established, the
burden shifts to the party seeking remand to show that an
exception requiring remand – in this case, the home state
exception to CAFA – applies. Kaufman v. Allstate N.J. Ins. Co.,
561 F.3d 144, 153 (3d Cir. 2009); see also Breuer v. Jim's
Concrete of Brevard, Inc., 538 U.S. 691 698 (2003) ("[W]henever
the subject matter of an action qualifies it for removal, the
burden is on a plaintiff to find an express exception.").

**C. The Parties' Arguments**

As noted above, the dispute in this case revolves around whether CAFA's minimum diversity requirements have been met. Johnson & Johnson is a citizen of New Jersey because it is a New Jersey corporation with a principal place of business in Skillman, New Jersey. (Compl. ¶ 11.) See 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ."). The class representative, Jillian Gallagher, is also a citizen of New Jersey and purchased Defendant's Bedtime products at a pharmacy in Berlin, New Jersey. (Compl. ¶ 40.)

The dispute over diversity jurisdiction lies with the scope of the plaintiff class and the citizenship of its members. Pointing to the class definition, Plaintiff contends that every member of the class is, by definition, a New Jersey citizen. She also argues that even if there is minimum diversity, the "home state" exception in CAFA would require this case to be remanded back to state court. (Mot. to Remand, at 4-9, 11-13; Reply in Support of Mot. to Remand [Docket Item 19], at 2-3, 7-8.)

Johnson & Johnson argues that the Court should look beyond the class definition because elsewhere in the Complaint,

Plaintiff broadly construes the putative class members to include all those who purchased Defendant's Bedtime products in New Jersey. Defendant argues that the class therefore potentially includes non-New Jersey citizens who traveled to New Jersey to buy the products. Citing Schwartz v. SCI Funeral Servs. of Fla., Inc., 931 F. Supp. 2d 1191, 1198 (S.D. Fl. 2013), affirmed, 554 F. App'x 823 (11th Cir. 2014), Defendant also argues that because the requested relief will benefit consumers across the country, they should be counted as part of the class because they are the real parties in interest. (Notice of Removal [Docket Item 1], ¶¶ 14-20; Opp'n to Mot. to Remand [Docket Item 17], at 4-10.)

### D. Plaintiff has Appropriately Limited the Putative Class Members to New Jersey Citizens

Because resolution of this jurisdictional dispute depends upon how the class members are defined, the Court turns first to Plaintiff's Complaint. As noted above, the Complaint defines the class as "New Jersey citizens" who purchased Bedtime products in the state. (Compl. ¶ 48.) Rather than use Plaintiff's class definition, Defendant urges the Court to define the class from other parts of the Complaint, specifically, to two sentences in the Preliminary Statement and Statement of Facts which suggest that the relief is being sought on behalf of all individuals who purchased Defendant's products in New Jersey. (See Compl. ¶ 5

10

("This class action seeks to provide redress to consumers in New Jersey who have been harmed by the false and misleading practices Defendant has engaged in . . . ."); id. ¶ 13 ("This class action is brought against J&J for the benefit and protection of all purchasers of Bedtime Products in New Jersey."); see also id ¶ 6 ("Plaintiff brings this action to obtain redress for those who have purchased the Bedtime Products").) Defendant argues that because this broader class definition will include out-of-state residents who made New Jersey purchases, minimum diversity under 28 U.S.C. § 1332(d)(2)(A) is satisfied. (Opp'n to Mot. to Remand, at 4-8.)

The Court is unpersuaded by Defendant's approach. First, courts generally look to the plaintiff's proposed class definition to determine the citizenship of putative class members for diversity jurisdiction. See, e.g., In re Hannaford Bros. Co. Customer Data Security Breach Litig., 564 F.3d 75 (1st Cir. 2009) (noting that home state exception applied because defendant was a Florida citizen and "[a]s [plaintiff] has defined the class in his complaint, all class members are Florida citizens."); In re Sprint Nextel Corp., 593 F.3d 669, 676 (7th Cir. 2010) ("[T]he plaintiffs might have defined their class as all Kansas citizens . . . . By using that definition, the plaintiffs could have guaranteed that the suit would remain

in state court."); <u>Weight v. Active Network, Inc.</u>, 29 F. Supp. 3d 1289, 1294 (S.D. Cal. 2014) (no diversity of citizenship where plaintiff pleaded a class limited to California citizens and defendant was a California citizen).

Plaintiff's "class definition" is plainly noted in the Complaint. Under "Class Action Allegations," Plaintiff specifically states that she seeks "injunctive and other relief on behalf of herself and all other similarly situated members of the class, defined as [a]ll New Jersey citizens" who purchased Defendant's products in New Jersey, "not for resale or assignment." (Compl. ¶ 48.) Defendant's argument for using stray allegations from other parts of the pleading to define the class may be more convincing if the parameters of the proposed class were unclear, but that is not the case here. There is nothing ambiguous about Plaintiff's definition of the parties to be included in this suit.

If that were not enough, Plaintiff has also clarified in her motion to remand that the class members in this action are New Jersey citizens who purchased Defendant's products in New Jersey. In other words, Plaintiff has affirmed that the class definition accurately defines the class, and the class does <u>not</u> include any non-New Jersey citizens. (Mot. to Remand, at 6-7.) It is readily apparent that Plaintiff has chosen to limit the

proposed class to citizens of this state, and the Court is not at liberty at this stage to reject Plaintiff's class definition and render a different interpretation.[2]

Nor does the Court find the restriction to New Jersey plaintiffs problematic. Although the Court agrees with Defendant that it should "look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction," there is nothing improper about limiting a putative class to only citizens from this state. (Opp'n to Mot. to Remand, at 6 (quoting Mississippi ex rel. Hood v. AU Optronics, 134 S. Ct. 736, 745 (2014)).) "CAFA does not change the proposition that the plaintiff is the master of her own claim" and may limit her claim so as to avoid federal subject matter jurisdiction. Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006); see also Johnson v. Advance Am., 549 F.3d 932, 937 (4th Cir. 2008) (plaintiff is entitled to "limit the class to citizens" of New Jersey "so as to avoid federal jurisdiction under CAFA."); In re Sprint Nextel Corp., 593 F.3d 669, 673 (7th Cir. 2010) (acknowledging CAFA's general goal to provide a federal forum for class actions but noting that CAFA "also

---

[2] To the extent Defendant seeks to attack the appropriateness of the class definition, it will have ample opportunity to do so at the class certification stage. See Tahir v. Avis Budget Grp., Inc., No. 09-3495, 2009 WL 4911941, at *8 (D.N.J. Dec. 14, 2009).

provided for exceptions, and plaintiffs are free to 'circumscribe their class definitions' to fit within one of those exceptions and avoid federal jurisdiction"); In re Hannaford Bros. Co. Customer Data Security Breach Litig., 564 F.3d 75, 76 (1st Cir. 2009) (rejecting argument that plaintiff has improperly defined the class by requiring all class members to be citizens of a certain state); Kendall v. CubeSmart L.P., No. 15-6098, 2015 WL 7306679, at *3 (D.N.J. Nov. 19, 2015) ("Plaintiff . . . is entitled to circumscribe the definition of the proposed class so as to avoid federal jurisdiction.").

Defendant's contention, that the class will nevertheless include some individuals who are no longer New Jersey residents, is equally without merit. Defendant notes that individuals who were New Jersey citizens at the time of purchase may have since relocated and become citizens of other states. (Opp'n to Mot. to Remand, at 6.) That argument, however, ignores the basic rule that class is determined at the time the complaint was filed. See 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined . . . as of the date of filing of the complaint or amended complaint . . . ."). Thus, an individual who was a New Jersey citizen at the time of injury but who established domicile outside the state *before* Plaintiff filed her complaint would not qualify as a "citizen of

14

New Jersey" at the time the complaint was filed. These
individuals were not, and would not be, included as class
members and would have no impact on whether minimal diversity
exists. Likewise, because "'jurisdiction of the Court . . .
cannot be ousted by subsequent events,'" a class member who
moved to another state *after* the complaint was filed would not
affect the jurisdictional analysis. Kaufman v. Allstate N.J.
Ins. Co., 561 F.3d 144, 152 (3d Cir. 2009) (citation omitted);
see also Johnson v. Advance Am., 549 F.3d 932, 938 (4th Cir.
2008) ("[I]f the person established citizenship in another State
after the complaint was filed, it would not affect jurisdiction
that existed at the time the complaint or notice of removal was
filed.") (emphasis added).

### E. Real Parties in Interest are Not Included for Purposes of Determining Diversity Jurisdiction Under CAFA

The Court now turns to Defendant's argument that the Court
should take into account the citizenship of consumers
nationwide, all of whom, Defendant argues, stand to benefit from
this lawsuit. Defendant's argument stands on a single Florida
district court case, Schwartz v. SCI Funeral Servs. of Fla.,
Inc., 931 F. Supp. 2d 1191 (S.D. Fla. 2013). In Schwartz, the
court held that because the injunctive relief sought would also
benefit non-citizens who were excluded from plaintiff's class,
the non-citizens, as real parties in interest, should be treated

15

as class plaintiffs in deciding whether the court had
jurisdiction. Id. at 1197-98, aff'd without discussion, 554 Fed.
App'x 823 (11th Cir. 2014).

Defendant seeks the same result here – it wishes this Court
to include real parties in interest as class members for
purposes of determining diversity jurisdiction under CAFA. As
Defendant's citation to a Florida case suggests, the Third
Circuit has not had an occasion to consider this specific
question. Because CAFA's jurisdictional statute is directly
implicated, the court's analysis must begin with the statutory
text before turning to Schwartz. See Mississippi ex rel. Hood v.
AU Optronics Corp., 134 S. Ct. 736, 741 (2014); Sebelius v.
Cloer, 133 S. Ct. 1886, 1892-93 (2013); Biskupski v. Attorney
General, 503 F.3d 274, 279 (3d Cir. 2007).

The Court starts with the fundamental axiom that Congress
"says in a statute what it means and means in a statute what it
says there." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254
(1992). Thus, when a statute's language is plain, "the court's
obligation is to enforce [it] according to its terms, at least
where the disposition is not absurd." Bonkowski v. Oberg Indus.,
Inc., 787 F.3d 190, 199 (3d Cir. 2015); Biskupski, 503 F.3d at
279-80 ("If the text of the statute is plain and unambiguous,
then our analysis also ends there."); see also Hartford

16

Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1,
6 (2000) (the "sole function of the courts" is to "enforce [the
statute] according to its terms," at least when the statute's
language is plain) (internal quotations and citation omitted).

In this case, the text of 28 U.S.C. § 1332(d) provides
clear guidance. 28 U.S.C. § 1332(d)(2) gives the district courts
jurisdiction over a class action where the amount in controversy
has been met and "*any member of a class* of plaintiffs is a
citizen of a State different from any defendant." 28 U.S.C.
§ 1332(d)(2)(A) (emphasis added). In turn, § 1332(d)(1) defines
"class members" as it is used in (d)(2) to mean "the persons
(named or unnamed) who fall within the definition of *the
proposed or certified class* in a class action." 28 U.S.C.
§ 1332(d)(1)(D) (emphasis added). Taken together, these
provisions instruct the court to look to the citizenship of
those persons who fall within the "proposed class" for purposes
of determining diversity.

CAFA does not define the term "proposed class," and the
court must construe the term in accordance with its "ordinary or
natural meaning." F.D.I.C. v. Meyer, 510 U.S. 471, 476 (1994);
Smith v. United States, 508 U.S. 223, 228 (1993). The word
"class" is modified by the word "proposed," which typically

means something that has been put forward for consideration.[3]
Thus, the ordinary meaning of the term "proposed class" means
the class that Plaintiff has set forth in her Complaint as the
class of similarly situated individuals on behalf of whom she
intends to relief. Because Gallagher does not act for those whom
she does not purport to represent, the real parties in interest
who fall outside her class definition are, logically, not
included within the meaning of the term as it appears in §
1332(d)(1). See, e.g., Stump v. Camp, 2014 582813, at *4
(interpreting "proposed class" in 28 U.S.C. § 1332(d)(1)(D)
synonymously with "Plaintiff's definition of the proposed
class," and rejecting the inclusion of individuals not included
in that definition).

What's more, 28 U.S.C. § 1332(d)(2)(A) makes clear that for

---

[3] Black's Law Dictionary defines a "proposal" as "[s]omething offered for consideration or acceptance." Black's Law Dictionary 1339 (9th ed. 2009). Similarly, Merriam-Webster Online defines the word "propose" to mean "to form or put forward a plan or intention" and "to set forth for acceptance or rejection." Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/proposal. The Tenth Circuit analyzed the word "propose" as it appears in the CAFA statute defining a "mass action," and noted that "propose" commonly "involves an intentional act." Parson v. Johnson & Johnson, 749 F.3d 879, 887 (10th Cir. 2014). This Court agrees that the most natural reading "is that plaintiffs must actually want, or at least intend to bring about, what they are proposing." Scimone v. Carnival Corp., 720 F.3d 876, 884 (11th Cir. 2013) (interpreting "proposed" as it appears in 28 U.S.C. § 1332(d)(11)(B)(i) of CAFA).

18

purposes of determining whether there is minimum diversity, the courts should look to the citizenship of the class members as defined by § 1332(d)(1) – the "proposed or certified class". It makes no mention of examining the citizenship of additional individuals. This omission is significant. It is a well-established rule of statutory interpretation that legislative intent "'can be derived only from the words they have used; and [courts] cannot speculate beyond the reasonable import of those words.'" Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528-29 (2013) (citation omitted). Consequently, when a statute's language is clear, courts may not "conclude that what Congress omitted from the statute is nevertheless within its scope." Id. at 2528; see also Animal Legal Defense Fund v. Dep't of Agriculture, 789 F.3d 1206, 1.17 (11th Cir. 2015) ("'Where Congress knows how to say something but chooses not to, its silence is controlling.'") (citation omitted).

Under the plain language of § 1332(d), only those who fall within the proposed class definition set forth by the plaintiff are considered for purposes of determining CAFA jurisdiction. "[W]hen judges must decide jurisdictional matters, simplicity is a virtue." Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1350 (2013). The statute makes no room for those who are not in the "proposed class" definition but who may nonetheless be

19

affected, and the Court declines to read additional individuals into the text. See Rea v. Federated Investors, 627 F.3d 937, 941 (3d Cir. 2010) ("We will not contravene congressional intent by implying statutory language that Congress omitted.").[4]

Although Defendant urges this Court to disregard the recent Supreme Court case Mississippi ex rel. Hood v. AU Optronics Corp., 134 S. Ct. 736 (2014) because it interprets a different section of CAFA, the Court finds it instructive. The statute at issue in AU Optronics concerned the removal of "mass actions" to federal court, which CAFA permits. Unlike class actions, which (as noted above) is defined as a suit which includes "persons (named or unnamed)" who fall within the class definition, CAFA defines "mass action" as "any civil action . . . in which money relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). The Supreme Court was called on to interpret § 1332(d)(11)(B)(i) to decide whether a suit filed by a State as the sole plaintiff

---

[4] It is, therefore, of no moment that Plaintiffs have filed class action suits in three other courts with a similar set of facts and plaintiffs who are not residents of New Jersey. The Court agrees with the First Circuit that CAFA's home state exception does not depend "on a broader assessment of the claims brought by others who do not fall within the complaint's class definition or of the claims available to the class against other possible defendants." In re Hannaford Bros. Co. Customer Data Security Breach Litig., 564 F.3d 75, 76 (1st Cir. 2009).

nevertheless falls within the meaning of "mass action" because
it sought restitution for injuries suffered by the State's
citizens. AU Optronics, 134 S. Ct. at 739. The Court held that
it does not, specifically rejecting an argument that unnamed
persons who were the "real parties in interest" could be counted
as plaintiffs under § 1332(d)(11)(B)(i). The Court was convinced
that the "plain text" of the statute required that the "100
persons" be actual "plaintiffs" in the action, as that word is
commonly understood. Id. at 743. Because only the State was a
named plaintiff, the numerosity requirement for a "mass action"
was not met.

The reasoning in AU Optronics applies just as well in the
instant case and forecloses Defendant's argument. Here, "persons
(named or unnamed) who fall within the definition of the
proposed . . . class in a class action" refers only to
individuals whose interests the plaintiff seeks to represent in
the case, which is set forth in the "proposed class definition"
in the class action complaint. Individuals who do not fall
within plaintiff's class definition – in this case, non-New
Jersey citizens – have not been "proposed" as class members, and
are therefore excluded.

Importantly, 28 U.S.C. § 1332(d)(2), which relies on the
definitions set forth in § 1332(d)(1), refers to the citizenship

21

of "any member of a class of plaintiffs."[5] By using the term "class of *plaintiffs*," CAFA clarifies that the proposed class members whose citizenships are to be considered are plaintiffs in the suit, albeit unnamed. "Plaintiff" "most commonly" means "a party who brings a civil suit in a court of law," and in <u>AU Optronics</u>, the Supreme Court held that to construe the word to include both named and unnamed real parties in interest "stretches the meaning of 'plaintiff' beyond recognition." 134 S. Ct. at 743. This Court agrees that the word "plaintiff" traditionally refers to individuals who commence a personal action or lawsuit, and "certainly does not mean 'anyone, named or unnamed, whom a suit may benefit.'" <u>Id.</u>

Reading § 1332(d)(1) in harmony with § 1332(d)(2), the Court holds that "class member" means a person who falls within the proposed "class of plaintiffs" as defined by plaintiff's class definition, and who is therefore a proposed plaintiff himself.[6] Because unnamed real parties in interest have not been

---

[5] This is no mistake. Subsequent subsections also refer to "members of all *proposed plaintiff classes*," and "members of the *proposed plaintiff classes*." <u>See</u> 28 U.S.C. §§ 1332(d)(3), (d)(4), (d)(5)(B), (d)(7).

[6] Defendant incorrectly argues that the Supreme Court, in rejecting the practice of counting of real parties in interest to satisfy the numerosity requirement, implicitly condoned the practice of using real parties in interest for purposes of deciding diversity under CAFA. (<u>See</u> Opp'n to Mot. to Remand, at 10.) The Court did no such thing. On the contrary, it noted that courts must look behind the pleadings "in certain contexts" to

"proposed" and are not "plaintiffs" by any plain and ordinary meaning of the word, the Court will decline Defendant's invitation to include the citizenship of those parties in determining diversity jurisdiction under 28 U.S.C. § 1332(d).

**F. Defendant's Citation to Schwartz is Unpersuasive.**

Defendant's argument is propped up only by Schwartz v. SCI Funeral Servs. of Fla., Inc., 931 F. Supp. 2d 1191 (S.D. Fla. 2013), which is easily distinguishable from the instant case. The plaintiffs in Schwartz sued a funeral service for improperly packing a cemetery with as many graves as possible, and sought relief on behalf of Florida citizens who were family members of interred decedents or who purchased burial rights at the cemetery. 931 F. Supp. 2d at 1192-93. Plaintiffs sought injunctive relief to resurvey, remap, and resanctify the cemetery, which required moving the remains of all of the cemetery's occupants to new grave spaces. Because the remedy could not be carried out without the legal consent of non-

---

ensure that parties are not improperly creating or destroying diversity jurisdiction, and went on to note only one context in which the court was allowed to inquire into the real party in interest. That was in "cases involving a State or state official," because in those instances, "a State's presence as a party will destroy complete diversity." AU Optronics, 134 S. Ct. at 745 (citing Mo., Kan. & Tex. Ry. Co. v. Mo. R.R. & Warehouse Comm'rs, 183 U.S. 53, 58-59 (1901)). Since no state or state officials are named in this suit, the concerns animating this practice are not implicated.

Florida citizens, the court determined that their citizenship must be included in the diversity inquiry under 28 U.S.C. § 1332(d)(2). Id. at 1197 (noting that the deceased "'cannot be moved to another grave space without the consent of the legally authorized person for the deceased, but at the same time the burial rights of others will be further impacted if the human remains are not moved.'") (citing plaintiff's Complaint).

The ramifications of the Schwartz plaintiffs' lawsuit clearly stretched beyond the state, since the relief they sought unavoidably implicated the rights of non-Florida citizens. The same cannot be said of Gallagher's case. The legal rights of non-New Jersey citizens will not be impacted by an injunction which rectifies alleged deceptive advertising practices. Further, a grant of money damages to a class of New Jersey plaintiffs does not change the amount of money that non-class members may seek. Johnson & Johnson is, of course, correct that non-New Jersey citizens who bought Bedtime products will benefit if Defendant is forced to change the label, but that argument holds little sway. All consumers of a product benefit from a class action when the product is changed to comply with the law, but that alone does not transform them into real parties in interest. In short, there is no strong interstate dimension in this case that triggers CAFA's jurisdictional concerns and that

24

calls out for a federal forum. See Class Action Fairness Act of
2005, Pub. L. No. 109-2 § 2(b)(2) (CAFA was enacted to prevent
states from making "judgments that impose their view of the law
on other States and bind the rights of the residents of those
States); West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 646
F.3d 169, 178 (4th Cir. 2011) (while the purpose of CAFA is to
prevent states from keeping "cases of national importance out of
Federal court," CAFA "is also sensitive to deeply-rooted
principles of federalism").

Aside from the distinguishing facts, there are other
reasons why this Court is hesitant to apply Schwartz. First,
Schwartz did not consider the statutory text, and instead relied
solely upon a Fifth Circuit case which applied the rule in a
distinct context. In that case, Louisiana ex rel. Caldwell v.
Allstate Ins. Co., 536 F.3d 418 (5th Cir. 2008), the Louisiana
Attorney General, acting on behalf of the state, brought a
parens patriae action against various insurance companies
seeking to recover damages suffered by individual policyholders.
Since "the federal court must disregard nominal or formal
parties" in determining diversity, see Bumberger v. Ins. Co. of
N. Am., 952 F.2d 764, 767 (3d Cir. 1991), and the state was
seeking damages for individual policyholders who were not named
in the action, Caldwell looked to the policyholders as the real

parties in interest. More importantly, the only named plaintiff in Caldwell was the state. Since "a State's presence as a party will destroy complete diversity," courts faced with a case involving a state party where jurisdiction is premised on diversity must look beyond the pleadings to determine the real party in interest. Mississippi ex rel. Hood v. AU Optronics Corp., 134 S. Ct. 736, 745 (2014); see also Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n, 598 F. 2d 1303, 1306 (3d Cir. 1979) (noting that "it is well settled that a state is not a citizen within the meaning of the diversity statute," and when "a particular case involves a question of diversity jurisdiction, . . . the initial inquiry is the same: is the state a real party in interest to the litigation?"); West Virginia ex rel. McGraw v. Bristol Myers Squibb Co., No. 13-1603, 2014 LW 793569, at *3 (D.N.J. Feb. 26, 2014).

Regardless of whether Schwartz was correct to apply Caldwell to a suit where no state party was involved, Caldwell has little application to the instant case. The state is not a plaintiff in this action. Nor does Plaintiff seek to vindicate the rights of unnamed parties who are not before the Court. Gallagher does not ask to recover damages for all consumers who were harmed – she seeks money damages only for putative class members consisting of New Jersey citizens who purchased the

26

product in New Jersey. Finally, unlike Schwartz, neither party
has identified any out-of-state residents whose inclusion in the
plaintiff class is necessary to effectuate the judgment sought
by the resident class.[7] In the present case, in other words, the
relief sought under the New Jersey Consumer Fraud Act does not

---

[7] Of course, as a Florida case, Schwartz is of interest but is
not precedent in this district. And because it was decided
before AU Optronics, there is the question of whether its
decision remains good law. The Court is unmoved by Defendant's
argument that Schwartz was affirmed by the Eleventh Circuit less
than a month after the AU Optronics decision. See Schwartz v.
SCI Funeral Servs. of Fla., Inc., 554 Fed. App'x 823 (11th Cir.
2014) (per curiam). The six-sentence opinion made no mention of
the recent Supreme Court case, and it appears from the opinion
that the parties had not briefed the impact of AU Optronics. See
id. at 824 (noting that Plaintiffs' appeal merely "renew[ed] the
arguments they made in support of their motion to remand."). The
few courts that have had the occasion to consider the impact of
AU Optronics on CAFA's class action provisions have consistently
held that CAFA's minimum diversity statute does not include
persons falling outside the plaintiff's proposed plaintiff
class, such as real parties in interest. See, e.g., Stump v.
Camp, No. No. 13-6739, 2014 WL 582813, at *4 (E.D. La. Feb. 13,
2014) (holding that "plaintiff's definition of the proposed
class" included only employees, not spouses of employees, and
"[a]ccordingly, the Court is not to consider those spouses when
assessing whether the jurisdictional requirements provided in
CAFA have been met."); Louisiana v. Zealandia Holding Co., No.
13-6724, 2014 WL 1378874, at *4 (E.D. La. Apr. 8, 2014) (noting
that the term "unnamed person" in § 1332(d)(1)(D) "necessarily
refers to an unnamed member of a proposed or certified class
asserted by a plaintiff. It does not refer to someone who is not
a member of such a class."); Bird v. Turner, No. 14-97, 2015 WL
3455355, at *4-5 (N.D. W. Va. May 29, 2015) (reviewing the class
definition proposed by plaintiff to determine whether it
fulfills the statutory requirements of § 1332(d)). In short,
after the Supreme Court's decision, Schwartz's reasoning may no
longer hold up today.

depend upon the presence of non-New Jersey residents in this suit.

***

It is apparent to the Court that Plaintiff in this case intended to restrict the class of plaintiffs to only New Jersey citizens. As Plaintiff may choose claims and parties to avoid federal jurisdiction, doing so was not improper. Moreover, because the text of 28 U.S.C. § 1332(d)(1) and (d)(2) does not support the counting of non-class members who may be real parties in interest, for purposes of determining diversity, the parties consist of a New Jersey defendant and a putative class of New Jersey plaintiffs.

The requirements of diversity jurisdiction under § 1332(d)(2)(A) have not been met, and removal would not serve CAFA's articulated interest in providing a federal forum for disputes reaching across state borders. See West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 646 F.3d 169, 178 (4th Cir. 2011). Accordingly, the Court will grant Plaintiff's motion to remand.[8]

---

[8] The remand, of course, does not permanently shut the federal court's door to Defendant. Under CAFA, Defendants are free to petition for removal "well into the course of litigation" should litigation documents later reveal facts supporting federal jurisdiction. Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 508 (3d Cir. 2014). See 28 U.S.C. § 1446(b)(3) (permitting removal "within 30 days after receipt by the defendant" of an

**G. Remand is also Required Under CAFA's "Home State" Exception**

As noted above, CAFA's "home state" exception provides that a federal court must decline to exercise subject matter jurisdiction in cases where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(2)(4)(B). The "home state" exception is one of two "mandatory exceptions" to federal subject matter jurisdiction, Vodenichar v. Halcon Energy Props., Inc., 733 F.3d 497, 503 (3d Cir. 2013), and ensures that a class action remain in state court "when the controversy is uniquely local and does not reach into multiple states." Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 149 (3d Cir. 2009).

The Court readily agrees with Plaintiff that the "home state" exception provides a second basis for remand. There is no question that more than two-thirds of the putative class members are New Jersey citizens. Defendant's argument, that Plaintiff has failed to present "evidence, not merely assertions or guesses," that the class reaches the threshold minimum citizenship, rings hollow, particularly in light of how

---

"amended pleading, motion, order or other paper" demonstrating jurisdiction); 28 U.S.C. § 1453(b) (one-year limitation period for removing under § 1446 "shall not apply" to class action cases).

Plaintiff has chosen to define the class. (Def. Opp'n to Mot. to Remand, at 12-14.) This is not a case in which the class consists of all purchasers in a given state, in which a purchaser's residence in the state is not a foregone conclusion. Under Plaintiff's proposed definition, New Jersey citizenship is a *prerequisite* for class membership. Extensive documented proof is not required to confidently reach the conclusion that a proposed class consisting of "[a]ll New Jersey citizens" contains at least two-thirds New Jersey citizens.[9] See In re Sprint Nextel Corp., 593 F.3d 669, 676 (7th Cir. 2010) (noting that "home state" exception would have applied had plaintiffs defined their class as "all Kansas *citizens*," because "it doesn't take any evidence to establish that Kansas citizens make up at least two-thirds of the members of a class that is open only to Kansas citizens.") (emphasis added).

Plaintiffs have proven that this case satisfies CAFA's "home state" exception, and remand is also required under 28 U.S.C. § 1332(d)(2)(4)(B).[10]

---

[9] Here, Defendant's argument is undermined by its own cited case, Dicuio v. Brother Int'l Corp., No. 11-1447, 2011 WL 5557528 (D.N.J. Nov. 15, 2011). Although the court in Dicuio required evidence of citizenship where the class was defined as "individuals who purchased cartridges in New Jersey," it noted that evidence of citizenship would not have been needed had plaintiff just defined the class as "all New Jersey citizens." Id. at *2, 5.

[10] The Court will, however, deny Plaintiff's request for

## IV.  DEFENDANT'S MOTION TO TRANSFER VENUE

Because the Court is without federal subject matter jurisdiction to consider the case, the Court will dismiss without prejudice Defendant's application to transfer venue to another district, because it is moot. See, e.g., Coldwell Banker Real Estate, LLC v. Jupe Real Estate, LLC, 2012 WL 479723, at *3 (D.N.J. Feb. 14, 2012) (granting plaintiff's motion to remand and dismissing as moot defendant's cross-motion to transfer venue); Smith v. Dunbar Armored, Inc., No. 09-6372, 2010 WL

---

attorneys' fees and costs under 28 U.S.C. § 1447(c). Section 1447(c) permits a court, at its discretion, to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." Absent "unusual circumstances," attorney's fees may be awarded "only where the removing party lacked an objectively reasonable basis for seeing removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005); see also Lott v. Duffy, 579 Fed. App'x 87, 90 (3d Cir. 2014) ("[W]hether fees are awarded should turn on the reasonableness of the removal."). In this case, the Court cannot conclude that Defendant's actions were objectively unreasonable. Johnson & Johnson pointed to several assertions in the Complaint that could have reasonably been interpreted to suggest that Plaintiff was seeking relief on behalf of a nationwide class of consumers. Moreover, the question of whether real parties in interest in a class action may be counted for purposes of diversity under CAFA has not been decided in the Third Circuit, nor was that specific question answered by the Supreme Court in Mississippi ex rel. Hood v. AU Optronics, 134 S. Ct. 736, 745 (2014). Defendant relied on Schwartz v. SCI Funeral Servs. of Fla., Inc., 931 F. Supp. 2d 1191, 1198 (S.D. Fl. 2013), which AU Optronics calls into question, but the case was affirmed by the 11th Circuit shortly after AU Optronics, and it has not specifically been overruled. While the Court was ultimately unpersuaded by Defendant's arguments, it would be wrong to conclude that the removal was unsupportable and unreasonable.

2521450, at *2-3 (D.N.J. June 10, 2010) (granting remand and denying Defendant's motion to transfer because there was no support to "transfer this action to a different district in which jurisdiction would be lacking"); Roxbury v. Gulf Stream Coach, Inc., No. 07-6046, 2008 WL 4307113, at *3 (D.N.J. Sept. 15, 2008) (granting cross-motion to remand and denying without prejudice defendant's motion to transfer "in light of the disposition of the cross motion.").

**V.   CONCLUSION**

    For the foregoing reasons, the Court will grant Plaintiff's motion to remand and will remand this case to the Superior Court of New Jersey, Camden County, Law Division. Defendant's motion to transfer will be dismissed as moot. The accompanying Order for Remand will be entered.


**March 14, 2016**                **s/ Jerome B. Simandle**
Date                              JEROME B. SIMANDLE
                                      Chief U.S. District Judge